NAT'L PETROLEUM MUTUAL FIRE INS. CO. and INTERNATIONAL OIL CO., Appellants, v. JOHN BARTON PAYNE, Director General, as Agt. of the "Soo Ry." and CHARLES PIKE, Respondents.

(187 N. W. 138)

**Master and servant — evidence held insufficient to show conductor acted within scope of employment; conductor's negligence causing fire and oil station manager's contributory negligence held for jury.**

In an action against a carrier and its conductor for negligence resulting in loss by fire, where some evidence was received to the effect that the conductor carried into an oil station a lighted lantern and a

gasoline can with which to purchase and secure high-test gasoline, it is *held,* for reasons stated in the opinion, that the evidence was insufficient, as a matter of law, to establish that such conductor was then acting within the scope of his employment or was seeking to purchase gasoline for railway purpose, and, further, that the questions of the conductor's negligence and the contributory negligence of the manager of the oil station were questions of fact for the jury.

Opinion filed Feb. 17, 1922.

Action in District court, Ward county; *Leighton, J.*

Plaintiffs have appealed from a judgment entered upon a directed verdict.

Affirmed as to the carrier; reversed and new trial granted as to the conductor.

*McGee* and *Goss,* for appellant.

"An act is within the scope of the servant's employment where necessary to accomplish the purpose of his employment and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act, rather than its method of performance is the test of the employment." 26 Cyc. 1534; 18 R. C. L. 795, § 254; Galehouse v. Soo, 22 N. D. 615, 135 N. W. 189, 47 L. R. A. (N. S.) 965; Wingen v. Soo Line, 42 N. D. 517, 173 N. W. 832; Froelich v. N. P. Ry. Co. 42 N. D. 550, 173 N. W. 822.

"Prima facie, when the act is one which the master himself might have done, it will be presumed that it was an act within the scope of the servant's authority, and the burden of proving want of authority rests upon the defendant." Seybold v. Eisle, (Iowa) 134 N. W. 578; Citing Wood on Master and Servant, p. 559; Jackson v. Railroad Company, 47 N. Y. 274, 7 A. R. 448; Higgins v. Turnpike Co. 46 N. Y. 23, 7 A. R. 293; Cosgrove v. Odgen 49 N. Y. 255, 10 A. R. 361; Schulte v. Holliday, 54 Mich. 73, 19 N. W. 752.

*Palda & Aaker,* for respondents.

"Facts affirmatively established by tangible proofs, not conjectures, are essential to a right of recovery. Evidence that leaves the jury to roam at will in the field of conjecture and speculation to find a verdict

can no more be tolerated by courts of justice than a judgment without evidence." Bowen v. Ill. C. R. R. Co. 136 Fed. 306, 69 C. C. A. 448, 70 L. R. A. 815, citing also Central Coal & Coke Co. v. Hartman, 111 Fed. Repelent 98, 49 C. C. A. 244.

Another statement of the rule is as follows: "Where a servant steps aside from his masters' business and does an act not connected·with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left his employers business, the relation of master and servant did not exist as to the wrongful act; but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the master is liable." Pittsburg, Cincinnati & St. Louis R. R. Co. v. Kirk, 102 Ind. 399, 52 Am. Rep. 675, Citing 14 How. 468.

## Statement.

BRONSON, J. This is an action to recover damages for negligence. The plaintiffs have appealed from a judgment entered upon a verdict directed for the defendants. The insurance company paid its obligation resulting from the fire and is one of the plaintiffs, through assignment and subrogation. The oil company operated at Parshall, N. D., an oil station for the sale of gasoline and kerosene. There is evidence in the record to the following effect: On October 15, 1918, one Pierce was manager and in charge of the oil station. Pursuant to his testimony, on that day, in the evening, one Pike, a conductor of the Soo Railway, came to this oil station. Pierce had just filled a barrel of gasoline for a farmer and was making out an oil check in the office. The conductor came in and requested some high-test gas for his lantern. Pierce took the can which the conductor had with him and proceeded into the warehouse to a barrel some 40 feet distant. The office in the warehouse was lighted by electric lights of 100 candle power. The conductor followed Pierce. Pierce emptied some gasoline out of the barrel into a filling can. Then, as he was putting a funnel in the can brought, the conductor stepped around, let his lantern down, and the explosion and fire followed. Then for the first time, Pierce noticed that the conductor had a lighted lantern. Pierce gave the lantern a kick and it went outside over the warehouse platform. The warehouse

was destroyed by the fire. Pierce further testified that he had been in the oil business for 12 years; that he never permitted gasoline to be drawn from one container to another when there was any living flame or fire near; that he did not use nor allow lighted lanterns around the plant; that he was always on the lookout for them; that the lantern was an ordinary railroad lantern with a mark of the Soo Line upon the globe; that during the time he had been working there, some 2½ months, the trainmen of the Soo had been there some eight or ten times to get kerosene or gas; that an engineer had gotten some steam cylinder oil there; that some 2 or 3 weeks before one of the trainmen borrowed a five-gallon can, filled with gasoline, which he took down to the train and emptied, returning the empty can. The farmer testified that he saw the conductor walk into the office; then he was standing between two doors watching his team tied outside; that the conductor had a two-gallon can with him and carried a lighted lantern in his hand. He asked in a jolly way if he could get some high-test gas. The farmer got an idea that it was for his lantern. Pierce got up, took his can, and walked to the other end of the building to a barrel. The conductor walked right behind him with his lantern. He saw Pierce tipping a barrel and saw the flames shoot up.

Pursuant to the conductor's testimony, he was in charge of a mixed train that ran from Sanish to Max and return. He lived at Sanish. In his home he had and used a gasoline lamp. On the day in question he left Sanish early in the morning. He took a gasoline can with him. It did not bear a stamp of the Soo Line and did not belong to the Soo Railway. It was painted red with the word "gasoline" thereon. Upon the arrival of the train at Parshall they went to supper, loaded some freight, did some switching, and then he went to the oil station. Upon arrival he saw nobody in sight. He hallooed. Pierce came to the door. He inquired what the chances were to get some gas, and Pierce replied "Good." He put down his gasoline can and his lantern, which he was carrying, on the platform outside. Pierce picked up the can and the lantern and went inside. He requested him, the conductor, to come in. He went in and over to the barrel. He wanted gasoline for this lamp at home. Once before he had been there to get some gasoline which he took home with him on the train. He told Pierce that he was careless in handling oil. He saw him spill some on the plank floor. When he came in Pierce was pouring some oil out of his five-gallon can. The

lantern was sitting about six or seven feet away. Pierce used a funnel too big for the can. The conductor put one hand on the gasoline can and the other on the funnel. The gasoline spilled over the side. While the can was being filled, the flames started. Nothing the conductor did in the oil house had any connection with the Soo Railway. The lantern was not a railroad lantern. He bought and paid for it. It had no mark of the Soo thereupon, unless, perhaps, upon the globe. He did not use gasoline in this lantern. There was no gasoline used on the train, for lighting or heating, by him or any of the employees. He used this lantern for railroad purposes, to give signals. Another brakeman testified that the conductor carried an Adlake lantern; that no gasoline was used on the train for any purpose. Another brakeman testified that he saw a red gasoline can upon the train that morning which the conductor said belonged to him; that he had bought gasoline from Pierce previously, received it in an empty milk can, and took it home with him in the back of the engine tank. A truck driver for the oil company testified that when the fire started he was in a truck shed across the street. He saw the conductor go up to the platform and set down his can and lantern in front of the door. He saw Pierce come out in front, pick up the can and lantern, and go within. In the evening, after the fire, he heard Pierce make the statement that he grabbed up the lantern and the can and started into the warehouse. Another witness testified that he bought the Adlake lantern for the conductor, and that it was customary for trainmen to provide themselves with lanterns. The plaintiff offered in evidence the burned remnants of an Adlake lantern. They offered to prove that Adlake lanterns similar to such lantern introduced in evidence, and of the kind used by conductors and trainmen in service, will burn either gasoline or kerosene successfully and perfectly and are used in such train service burning gasoline successfully and perfectly— all to establish that this Adlake lantern used by the conductor at the time of the fire would burn perfectly and successfully on gasoline fuel or oil, and that the conductor was purchasing the gasoline in question for the Adlake lantern in the performance of his railroad duties as train conductor, and as corroborative of the statement made by the conductor at the time of the purchase that he wanted the gasoline for use in his lantern. This offer was rejected.

The plaintiffs contend that the trial court erred in directing the verdict and in refusing the offer of proof; that the record discloses ques-

tions of fact for the jury as to whether it was negligence for the conductor to take his lighted lantern within the oil station, and as to whether the conductor, while so doing, was acting within the scope of his railway employment, and also whether Pierce was guilty of contributory negligence.

## Decision.

We are of the opinion that the record fails to disclose any evidence sufficient to form a question of fact for the jury that the conductor was acting within the scope of his employment or for any railway purpose when he purchased, or sought to purchase the gasoline in question. It may be conceded that there is evidence in the record sufficient to establish in connection with the offer of proof, that the conductor, at the time of the fire, was on duty and carried the lantern in question for use in connection with his duties and for railway purposes, and that, furthermore, he brought to the oil station a gasoline can labeled "Soo Line," and brought within the oil station both this lantern, lighted, and the gasoline can, and, furthermore, that an Adlake lantern may perfectly and successfully burn gasoline as fuel. Nevertheless the admission of the conductor, if so found, or if true, that he wanted to purchase gasoline for his lantern, is wholly insufficient as evidence to establish a finding that this Adlake lantern carried by the conductor burned, or ever burned, gasoline as a fuel while used by this conductor, or that the conductor sought to purchase such gasoline for any railway purpose. This is particularly so in view of the direct evidence offered in the record that the gasoline was purchased for private use. The fact that an Adlake lantern, not distinctly shown to be exactly the same as that used by the conductor, burns gasoline successfully and perfectly is not probative evidence to establish that this conductor did burn gasoline in his lantern, or that gasoline was ever used in this lantern by this conductor for a railway purpose. Likewise, in the absence of proof of the use of gasoline upon the train for any railway purpose, the evidence of purchases of kerosene, cylinder oil, or even gasoline in this oil station by trainmen had no probative force in establishing the use of gasoline by this conductor in his railroad lantern. However, we are of the opinion that the record discloses questions of fact for the determination by a jury concerning acts of negligence by the conductor Pike. If the jury should find, upon the evidence, that this conductor

brought within the warehouse the lighted lantern and proceeded with the same to the gasoline barrel without the notice or knowledge of Pierce, and should otherwise find that Pierce was not guilty of contributory negligence, such finding would support the actionable negligence charged against the defendant conductor.

Accordingly it is ordered that the judgment of the trial court affecting the Director General be affirmed, with costs; otherwise the judgment is reversed, and a new trial granted, with costs.

CHRISTIANSON, ROBINSON, and BIRDZELL, JJ., concur.

GRACE, C. J., concurs in the result.